UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
——

JAMAL UMAR BUCHANAN,

                 Petitioner,                Case No. 1:16-cv-258

v.                                    Honorable Robert J. Jonker

BONITA HOFFNER,

                 Respondent.
_____/

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. On October 28, 2009, Petitioner pleaded *nolo contendere* in the Muskegon County Circuit Court to one count each of safe-breaking, MICH. COMP. LAWS § 750.531, first-degree home invasion, MICH. COMP. LAWS § 750.110a, and being a felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, together with three counts of possessing a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. On November 17, 2009, he was sentenced, as a fourth felony offender, MICH. COMP. LAWS § 769.12, to prison terms of sixteen to forty years on both the home-invasion and safe-breaking convictions, four to twenty years on the felon-in-possession conviction, and two consecutive years on each of the felony-firearm convictions. Petitioner is presently serving that sentence at the Lakeland Correctional Facility in Coldwater,

Michigan.  In his amended habeas petition, Petitioner raises the following grounds for relief:

I.     DEFENDANT DENIED / DEPRIVED DUE PROCESS AND EQUAL PROTECTION OF THE LAW.  COURT APPOINTED ATTORNEY FAILED TO SUBMIT DEFENDANT'S APPEAL FORMS ON TIME CONSTITUTED A STATE CREATED IMPEDIMENT, PURSUANT TO 28 U.S.C. 2244(d)(1)(B) / 6TH & 14TH AMENDMENTS.

II.    DEFENDANT DEPRIVED / DENIED, TOLD BY ATTORNEY HE WOULD GET 78 MONTH PLEA DEAL IF HE WAIVED HIS JURY TRIAL. STRICKLAND V. WASHINGTON, SANTOBELLO V. NEW YORK.

III.   IF DEFENDANT WOULD HAVE KNOWN HE COULD GET A LONGER SENTENCE THAN PROMISED HE WOULD GET, HE WOULD HAVE NOT WAIVED JURY TRIAL. SANTOBELLO V. NEW YORK.

(Pet. 6-9, ECF No. 4, PageID.74, 77-79.)

Respondent has filed an answer to the petition (ECF No. 14), stating that ground one should be denied because it is procedurally defaulted, and the remaining grounds should be denied because they have no merit.  Upon review and applying the AEDPA standards, I find that  ground one is procedurally barred, but is also without merit, and grounds two and three are without merit.  Accordingly, I recommend that the petition be denied.

## Factual and Procedural History

### A.     Trial Court Proceedings

Petitioner was accused of breaking into a home in Muskegon County, Michigan, and, while there, breaking into a safe and taking items from it.  He was further

accused of stealing firearms from the residence.  Because of Petitioner's felony record, it was illegal for him to possess a firearm.  Petitioner was subsequently charged with first-degree home invasion, safe breaking, being a felon in possession of a firearm, and two counts of felony firearm.

At the preliminary examination hearing on June 12, 2009, Virginia Fleming testified that she had taken a cruise in September of 2008.  When she left, her home in Muskegon County was locked up.  (Preliminary Examination (PE) Tr. 4, ECF No. 9-2, PageID.153.)  She testified that she had a safe in her house that she kept in her bedroom closet with a towel over it.  She also had five firearms that she kept in the back bedroom.  (PE Tr. 5, PageID.154.)  When Ms. Fleming returned home from her cruise, her nephew told her that the door to her home was open, and she noticed that the back door had been kicked in.  Ms. Fleming further testified that she found "things all over" the inside of the house.  (PE Tr. 5-6, 9, PageID.154-155, 158.)  Her safe was in her dining room with a big hole in it.  The paperwork that had been inside the safe was strewn about the room.  (PE Tr. 6, PageID.155.)  Other items that had been inside the safe including cash, a diamond ring, and her husband's coin collection, however, were gone.  (PE Tr. 6-7, PageID.155-156.)  Ms. Fleming further noticed that the guns were also missing.  (PE Tr. 7, PageID.156.)  Ms. Fleming testified that she had never before seen Petitioner or given him permission to be in her home.  (PE Tr. 5, PageID.154.)

The prosecution next called Officer Steven Stout, an evidence technician with the city of Muskegon Police Department.  Officer Stout testified that he was called to

Ms. Fleming's residence on September 29, 2008. (PE Tr. 11, PageID.160.) When he arrived, Officer Stout noticed that the back door to the house had been broken. (*Id.*) The front door was also open, and the officer found a safe in the dining room that was laying on its side. There were papers and tools strewn about in the area. (PE Tr. 12, PageID.161.) The officer noticed that the dial face to the safe was broken off, and the hinge pins were also damaged. (PE Tr. 13, PageID.162.) Officer Stout testified, however, that the breach of the safe had happened through the bottom of the safe. Specifically, the sheet metal had been ripped from the bottom and the concrete beneath the metal had been broken through. Officer Stout further stated that the sheet metal had sharp edges. (PE Tr. 14, PageID.163.) Around the safe the officer noticed checkbooks and other pieces of paper that appeared to have come from inside the safe. (PE Tr. 15, PageID.164.) On some of those papers, Officer Stout saw a substance he believed to be blood, and seized the papers as evidence. (*Id.*) Officer Stout testified that the evidence was submitted to the Michigan State Police crime lab, was tested, and the results matched with an individual named Jamal Buchanan. (PE Tr. 17, PageID.166.)

Next, the prosecution called Michael Addicott, a police officer for the city of Muskegon. Officer Addicott testified that he interviewed Petitioner with another detective in May 2009. (PE Tr. 23, PageID.172.) He testified that prior to beginning the interview, Petitioner's rights were read to him, and Petitioner agreed to waive those rights and speak with the detectives. (PE Tr. 24-25, PageID.173-174.) Officer Addicott further testified that after being confronted with the results from the crime

- 4 -

lab, Petitioner admitted that he was a look out during the break in of Ms. Fleming's residence. (PE Tr. 25, PageID.174.)  Petitioner further admitted that he had been cut during the incident. (PE Tr. 26, PageID.175.) After hearing this testimony, the district court found probable cause to bind Petitioner over for trial on the charges.

On October 28, 2009, the day his trial was scheduled to begin, Petitioner pleaded *nolo contendere* to the charges.  There was no *Cobbs*[1] agreement or plea agreement in the case. (Plea Tr. 3-4, PageID.188-189.)  The trial court discussed the charges with Petitioner and went over the maximum sentences each of those charges carried. (Plea Tr. 8-11, PageID.194-197.)  For the factual basis, the parties stipulated that the court could reference the preliminary examination testimony.  Petitioner also admitted to three prior offenses. (Plea Tr. 18-19, PageID.203-204.)  Petitioner stated that he fully understood the plea agreement and the rights he was waiving by pleading guilty, and that he was pleading guilty of his own free will. (Plea Tr. 15-18, PageID.200-203.)

At the sentencing hearing, held on November 17, 2009, the prosecution asked for a five point increase for both offense variables five and sixteen. (Sentencing Tr. 4-5, PageID.213-214.)  The court accepted the increase with no objection from the defense.  Petitioner's guideline minimum sentencing range thus became 78 to 260 months.

---

[1] A "*Cobbs* agreement" refers to a procedure set forth in *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), in which "the Michigan Supreme Court authorized a particular type of plea agreement wherein a judge states the appropriate length of sentence, which is non-binding, but if the defendant subsequently pleads guilty, that defendant retains the absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation." *Wright v. Lafler*, 247 F. App'x 701, 703, fn. 1 (6th Cir. 2007).

(Sentencing Tr. 5, PageID.214.)  Neither Petitioner nor his counsel had any additions or corrections to make to the presentence report and guidelines sheet.  (Sentencing Tr. 5-6, PageID.214-215.)  The trial court subsequently sentenced Petitioner to a term of imprisonment of sixteen to forty years on the home-invasion and safe-breaking convictions, four to twenty years on the felony-in possession conviction, and two consecutive years on each of the felony-firearm convictions.  (Sentencing Tr. 10-13, PageID.219-222.)

### B.    Direct Appeal

Petitioner attempted to appeal, but his signature was placed on the wrong line of the form.  In a letter received by the Muskegon County Circuit Court on June 4, 2012, Petitioner inquired about the status of his appeal.  In an order issued June 5, 2012, the court advised Petitioner that he had only signed an acknowledgment of receipt of his notice of right to appellate review and had not signed the request for appointment of counsel.  Following subsequent correspondence identifying the error, the trial court appointed counsel on August 22, 2013.

Appellate counsel filed a delayed application for leave to appeal to the Michigan Court of Appeals on October 3, 2013, raising the same two issues contained in grounds II and III of the instant habeas petition.  (*See* Def.-Appellant's Br. On Appeal, ECF No. 9-9, PageID.280.)  Petitioner also sought leave to file a motion to withdraw the plea in the trial court.  In an order issued December 11, 2013, the court of appeals denied leave to appeal for lack of merit in the grounds presented and further denied the motion to

allow Petitioner to move to withdraw his plea in the trial court.  (*See* 12/11/13 Mich.
Ct. App. Ord., ECF No. 9-9, PageID.269.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme
Court.  Petitioner raised the same two claims raised before and rejected by the
Michigan Court of Appeals, together with an additional claim reflected in ground I of
the instant petition.  By order entered April 28, 2014, the Michigan Supreme Court
denied Petitioner's application for leave to appeal because it was not persuaded that
the questions presented should be reviewed.  (*See* 4/28/14 Mich. Ord., ECF No. 9-10,
PageID.325.)

### C.    Post-conviction relief

Petitioner did not immediately seek further relief in the state courts or review
by the United States Supreme Court.  Instead, on August 21, 2014, Petitioner filed a
petition for habeas relief in United States District Court.  His amended petition, filed
on September 15, 2014, raised the same three grounds in the instant petition. *See*
*Buchanan v. Hoffner*, No. 1:14-cv-897 ECF No. 7 (W.D. Mich. Sept. 15, 2014)
[hereinafter *Buchanan I*].  In an opinion, order, and judgment dated October 1, 2014,
Judge Neff dismissed the petition pursuant to Rule 4 of the Rules Governing § 2254
Cases for lack of exhaustion of available state-court remedies.  *See Buchanan I*, ECF
Nos. 8-10.  Specifically, the court noted that Petitioner had filed a mixed petition
because, although his second and third grounds for relief had been presented to the
Michigan Court of Appeals and the Michigan Supreme Court and thus were properly
exhausted, his first ground for relief had only been presented on discretionary appeal

- 7 -

to the Michigan Supreme Court, which did not exhaust that claim.  The court further noted that Petitioner had not yet filed his one allotted motion for relief from judgment. Finding that Petitioner was not in danger of running afoul of the statute of limitations, the court concluded that a stay of the proceedings was not warranted and dismissed the petition for failure to exhaust available state-court remedies. *Buchanan I*, ECF No. 8.  The court noted that Petitioner could either further pursue his unexhausted clam in the state courts or file a new petition raising only the exhausted claims.  It appears Petitioner chose the former.

Accordingly, Petitioner returned to the Muskegon County Circuit Court by filing a motion for relief from judgment under MICH CT. R. 6.500 *et seq.*, on January 9, 2015, raising all three grounds in the instant petition. (Mot. for Relief from J., ECF No. 9-5, PageID.226-236.)  On January 13, 2015, the trial court denied Petitioner's motion, referencing MICH. CT. R. 6.508(D)(2). (1/13/15 Op. & Order, ECF No. 9-6, PageID.257-259.)  Petitioner's motion was again denied upon a motion for reconsideration.  (*See* 2/17/2015 Op. & Order, ECF No. 9-8, PageID.266–268.)

Petitioner filed applications for leave to appeal the denial of his motion in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders dated May 12, 2015 (ECF No. 9-11, PageID.334), and February 2, 2016 (ECF No. 9-12, PageID.380), respectively, finding that Petitioner had failed to meet his burden of establishing entitlement to relief under MICH. CT. R. 6.508(D).  Having thus

exhausted all his claims, Petitioner filed the instant petition on March 3, 2016.[2]  (ECF No. 1.)

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

---

[2] Petitioner originally filed his petition as an amended petition in *Buchanan I*. Construing the amended petition as a motion for relief from judgment Judge Neff, in an opinion and order dated March 10, 2016, denied Petitioner's motion, but ordered the Clerk to file the amended petition as a new habeas petition. *Buchanan I*, ECF No. 12.

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).  The presumption, however, is not irrebuttable.  *Johnson*, 133 S. Ct. at 1096.  Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review.  *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster*

*v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).  Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

### I.    Ineffective Assistance of Trial Counsel – Failure to Appeal

In his first ground for habeas relief, Petitioner contends that he was denied his constitutional rights when his trial counsel failed to timely submit his appeal forms. Petitioner notes that at his sentencing hearing, he had blamed his counsel for the situation he was in.  Petitioner alleges that his counsel, upset at these remarks, told Petitioner to sign the wrong line on the "Notice of Right to Appellate Review and Request For Appointment of Attorney," leaving blank the section in which a defendant could request the appointment of an attorney to appeal a conviction.  Furthermore, Petitioner contends his counsel failed to submit his appeal forms on time, leaving him to his own devices.

As previously noted, Petitioner raised this issue for the first time on discretionary review to the Michigan Supreme Court.  It was not properly presented in the state courts until his motion for relief from judgment.  The claim was rejected by those courts by referencing MICH. CT. R. 6.508(D).  While this may have exhausted his claim, it appears the claim is nonetheless procedurally barred as each level of the state courts denied relief under MICH. CT. R. 6.508(D).  *See Luberda v. Trippett*, 211

F.3d 1004, 1006-07 (6th Cir. 2000); *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998). However, where the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Cone v. Bell*, 243 F.3d 961, 971 (6th Cir. 2001), *rev'd on other grounds*, *Bell v. Cone*, 535 U.S. 685 (2002); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). The Court will do so here.

Turning, then, to the merits, in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

In the context of an attorney's alleged failure to file an appeal, the Supreme Court has indicated that the *Strickland* standard continues to apply. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In reviewing such a claim, "'[j]udicial scrutiny of counsel's performance must be highly deferential.'" *Id.* at 477 (quoting *Strickland*, 466 U.S. at 689). Where an attorney fails to initiate an appeal when specifically instructed to file he acts in a manner that is professionally unreasonable. *Flores-Ortega*, 528 U.S. at 477 (citing *Rodriguez v. United States*, 395 U.S. 327 (1969)). In contrast, a defendant who has instructed his attorney not to file an appeal cannot later complain

that his counsel performed ineffectively.  *Flores-Ortega* at 477.  Where the defendant has not clearly conveyed his wishes one way or the other, a court must first consider whether counsel consulted with the defendant about an appeal, advising the defendant of the advantages and disadvantages of doing so, and making a reasonable effort to determine the defendant's wishes.  *Id.* at 478; *see also Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003).   If counsel did consult, his performance is constitutionally deficient only if counsel failed to appeal as expressly instructed by a defendant.  *Regalado*, 334 F.3d at 524.  If counsel failed to consult, that lack of consultation is professionally unreasonable only where (1) a rational defendant would want an appeal, or (2) a particular defendant reasonably demonstrated to counsel an interest in appealing.  *Flores-Ortega*, 528 U.S. at 480.  If counsel deficiently failed to consult, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  *Id.* at 484.  Where an attorney has failed to file an appeal as directed, "'[n]o specific showing of prejudice [is] required,'" because 'the adversary process itself [is] presumptively unreliable.'"  *Flores-Ortega*, 528 U.S. at 483 (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)).

In the instant case, Petitioner argues both that his attorney told him to sign on an incorrect line and failed to file his appeal forms.  The record contradicts Petitioner's representations.  Indeed, in his July 24, 2013, letter to the circuit court asking for appointment of appellate counsel, Petitioner stated, twice, that it was due to his own "oversight," not due to any malfeasance or deficient performance by his counsel, that

Petitioner failed to file a request for appellate counsel.  (ECF No. 9-9, PageID.298.) This document undermines the credibility of Petitioner's current representations that his attorney specifically instructed him to sign on the incorrect line.  As for Petitioner's contentions regarding additional filings, the state courts found Petitioner's claims to be without merit.  Petitioner's bare assertions are insufficient to show, by clear and convincing evidence, that this determination was incorrect.

Finally, the Court notes that Petitioner was in fact granted the relief he seeks. Because Petitioner pleaded *nolo contendere*, he was not entitled to an appeal of right, but only to apply for leave to appeal.  *See* MICH. CT. R. 6.302(B)(5).  After receiving Petitioner's filings, the trial court appointed appellate counsel for Petitioner, and counsel subsequently filed a delayed application for leave to appeal.  That application resulted in a decision on the merits by both the Michigan Court of Appeals and the Michigan Supreme Court.  Petitioner would not be entitled to any further relief on this claim.

For all the above reasons, this first ground for habeas relief should be denied.

## II & III.    Voluntary and Intelligent Plea

In his remaining grounds for habeas relief, Petitioner alleges his guilty plea is invalid, and he should have been allowed to withdraw his guilty plea, because his trial counsel promised him he would receive a minimum sentence of 78 months and that had

he known he would have received a longer minimum sentence, he would not have pleaded guilty.  Petitioner further alleges ineffective assistance of counsel for making these alleged assurances.  Plaintiff's claims are belied by the record.

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267.  A plea not voluntarily and intelligently made has been obtained in violation of due process and is void.  *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).  Petitioner's claim does not challenge the power of the state to bring him into court.  Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into.  *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

In order to find constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady v. United States*, 397 U.S. 742, 756 (1970), and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426  U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S.

- 17 -

329, 334 (1941).  The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").  The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).  Finally, the defendant must have available the advice of competent counsel.  *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).  The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.  *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary

and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.*  A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

The two-part *Strickland* test applies to challenges of guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58.  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Petitioner's claim that his attorney advised him that his guilty plea would result in a lesser sentence than was actually imposed is flatly contradicted by Petitioner's

testimony at his plea hearing.  After confirming there was no plea or *Cobbs* agreement, the trial court informed Petitioner of the maximum charges, including the fact that the felony-firearm charges would be served consecutively with the other charges.  (Plea Tr. 8-12, PageID.193-197.)  Petitioner explicitly testified, under oath, that his decision to plead guilty was based solely on the terms of the plea agreement and was not based on any promises or statements that were not presented on the record during the plea proceedings. (Plea Tr. 15-18, PageID.200-203.)  When Petitioner stated that he had been told that he would be sentenced within the guidelines, the trial court directly stated that there had not been any agreements about that, and confirmed that there had not been any undisclosed promises or threats made to Petitioner to induce his plea. (Plea Tr. 16, PageID.201.)  The Court, then asked, for a third time, whether Petitioner understood that there was no plea agreement, no *Cobbs* agreement, and no agreement regarding sentencing of any kind.  Petitioner stated he understood.  (Plea Tr. 17, PageID.202.)

Even if Petitioner could show his counsel made such assurances, however, the plea colloquy was sufficient to cure any misunderstanding Petitioner might have had as a result of counsel's alleged error. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (citing *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (the trial court's "thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on [the defendant's] part before the plea was accepted," cured any claim that the defendant was prejudiced by erroneous "advice from [the defendant's] trial attorney [that allegedly] led to his misunderstanding of the consequences of his

guilty plea"); *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir.1992) (the trial court's "clear and thorough plea allocution" apprising the defendant "of the actual sentencing possibilities" prevented the defendant from claiming prejudice under *Strickland*)).

The trial court advised and Petitioner acknowledged that he understood that the conviction carried a maximum penalty of life imprisonment. The trial court further advised, and Petitioner admitted, that he had been promised no particular sentence. In such circumstances any misadvice by counsel is barred by Petitioner's admissions under oath. Petitioner, therefore, is not entitled to habeas relief on this claim. *See Ewing v. United States*, 651 F. App'x 405, 409-10 (6th Cir. 2016) (petitioner's claim that counsel was ineffective for misadvising him as to the length of his sentence if he pleaded guilty was foreclosed by a proper plea colloquy).

In sum, Petitioner cannot establish that his attorney promised him that if he pleaded guilty he would receive a lesser sentence than was actually imposed. Petitioner's second and third grounds for habeas relief should be denied.

### Certificate of Appealability

Should the Court deny the petition, it must determine whether a certificate of appealability should be granted. 28 U.S.C. § 2253(c)(2). A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue

- 21 -

must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484.  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims.  *Id.*

Examining petitioner's claims under the standard in *Slack*, reasonable jurists would not conclude this Court's assessment of petitioner's claims to be debatable or wrong.  Accordingly, I recommend that the Court deny petitioner a certificate of appealability.

### Recommended Disposition

For the foregoing reasons, I recommend that the Court deny the petition and any certificate of appealability.

Dated:  May 4, 2017                        /s/  Phillip J. Green
                                                  United States Magistrate Judge

### NOTICE TO PARTIES

- 22 -

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).